**Sharon KARIBIAN, Plaintiff,**

v.

**COLUMBIA UNIVERSITY, John Borden and Mark Urban, Defendants.**

**No. 91 Civ. 3135 (TPG).**

United States District Court,
S.D. New York.

Feb. 3, 1993.

---

Elizabeth L. Koob, Koob & Magoolaghan, New York City, for plaintiff.

Diane S. Wilner, Wilner & Associates, P.C., New York City, for Columbia and Borden.

Corwin & Solomon, New York City, for Urban.

OPINION

GRIESA, District Judge.

This is a sexual harassment case. There is a claim against Columbia University under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* There are also various claims against Columbia under state law theories. Defendants Borden and Urban are sued solely under state law theories.

Defendants Columbia and Borden move for summary judgment. The motion is granted. For reasons hereafter set forth, the Title VII claim against Columbia must be dismissed because there is no triable issue of fact. As to the state law claims against Columbia and the claims against Borden, there is no jurisdiction after dismissal of the Title VII portion of the action.

Although Urban has not made a motion, the court dismisses the action against him on its own motion, for lack of jurisdiction.

FACTS

In late 1986 while plaintiff was a student at Columbia, she obtained part-time employment with the University. The office she worked at was called "Telefund at Columbia University." Although it was part of the University, its activities were to some extent designed and administered by a separate company called Philanthropy Management, Inc. ("PMI"). The people working at Telefund consisted of both Columbia University employees and PMI employees. Telefund operated under the aegis of an entity at Columbia called University Development and Alumni Relations ("UDAR").

Defendant Urban was employed by Columbia University commencing in September 1987. He worked in UDAR and his duties included responsibility for Telefund. Borden was Deputy Vice President of UDAR from April 1, 1988 until sometime in 1991. He was Urban's superior.

Plaintiff alleges that she met Urban in the spring of 1987, before Urban went to work for Columbia. She alleges that Urban pressured her into having sexual relations commencing shortly after they met and continuing through 1989.

Columbia has an established mechanism for dealing with sexual harassment. Columbia publishes a bulletin entitled "Protection Against Sexual Harassment." The bulletin starts with a Policy Statement, which includes the unequivocal declaration that "the University prohibits sexual harassment of any member of the Columbia community." The bulletin describes remedies provided by the University. A person who believes that he or she is being sexually harassed is invited to confer with a member of the University Panel on Sexual Harassment. There is also provision for the aggrieved party (or the panel member with permission of the aggrieved party) to discuss the problem with the University's Office of Equal Opportunity and Affirmative Action ("EOAA"). Finally, the party alleging sexual harassment may file a grievance under the applicable University grievance procedure.

It is agreed by both sides that the first two steps—*i.e.,* resort to the University Panel on Sexual Harassment or resort to the EOAA—are entirely confidential. This means that there is no effort to investigate the matter or to obtain a remedy against the alleged guilty party. The grievance procedure, on the other hand, is not confidential and sets in motion an investigation and other steps which may lead to remedial action against the party complained of.

During September 1988 plaintiff consulted with one of the members of the Sexual Harassment Panel and also with an employee at the EOAA. Plaintiff concedes that she knew that these consultations were confidential. The EOAA employee has stated, without contradiction, that plaintiff specifically requested that there be no investigation at that time. The sexual relations between plaintiff and Urban continued.

Plaintiff claims that in April 1989, after Urban allegedly forced her to perform a sexual act, she related this incident to Loren Spivack, an employee of PMI. Plaintiff asserts that Spivack informed her that he had relayed the information to the presi-

dent of PMI, Ron Erdos. Plaintiff goes on to assert her belief that the Erdos in turn reported the incident to defendant Borden.

Plaintiff's statement under Local Civil Rule 3(g) alleges that defendant Borden knew or should have known that plaintiff was subjected to sexual harassment since at least April 1989. Borden's 3(g) statement asserts that he did not learn about plaintiff's complaint until 1990.

It should be noted that the presentations of all parties on the motion for summary judgment are based mainly on the extensive depositions taken in the case.

No deposition of Spivack or Erdos was taken. At least, there is no reference to such deposition testimony in the present motion. Borden's deposition was taken. Plaintiff's attorney asked Borden if he knew about a "nonbusiness relationship" between plaintiff and Urban, to which Borden replied that, when Urban recommended plaintiff for a promotion in late August 1989, Urban said that he and plaintiff had dated but that they were no longer dating. Borden testified that he learned nothing further until January 1990.

Thus there is no support in Borden's deposition or in any other evidence for the idea that Borden learned of the problem in April 1989. Plaintiff's proposition to this effect is entirely speculative.

After April 1989 sexual relations between plaintiff and Urban continued. On January 30, 1990 plaintiff met with Gertrude de la Osa, Director of Development Services at UDAR and complained about sexual harassment by Urban. The matter was promptly reported by de la Osa to Borden. An investigation was immediately conducted by Borden with the assistance of the Office of General Counsel of the University.

By early March Urban was relieved of any supervisory role with respect to plaintiff. In April 1990 Urban's resignation was requested and given. He left the University at that time.

### DISCUSSION

■ A sexual harassment claim under Title VII may be based on either of two theories: (1) "quid pro quo" or (2) hostile work environment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 2404–2405, 91 L.Ed.2d 49 (1986).

■ In order to prevail on a quid quo pro theory, the plaintiff must show an actual—rather than threatened—economic loss because of gender or because a sexual advance was made and rejected. Plaintiff produces no evidence demonstrating that she was denied an economic benefit. In fact, during the period of the alleged harassment, plaintiff was promoted from clerical worker to Project Director of Telefund. Her salary also increased. The court finds that there is no indication of any valid claim under the quid pro quo theory.

■ The allegations under the hostile environment theory must be dealt with in more detail. In the motion for summary judgment, Columbia does not attempt to disprove the allegations of misconduct against Urban. Columbia's position is that, even if Urban committed the misdeeds alleged, Columbia is not liable.

The Supreme Court has not established a definitive rule for employer liability, but has directed lower courts to draw from traditional agency principles. *Vinson*, 477 U.S. at 72, 106 S.Ct. at 2408. The Second Circuit has interpreted this guideline to mean that a plaintiff must prove "that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Kotcher v. Rosa & Sullivan Appliance Center, Inc.*, 957 F.2d 59, 63 (2d Cir.1992).

There is no basis for any contention that Columbia University failed to provide a reasonable avenue for making complaints. The only possible ground for holding Columbia liable is that it knew of the misconduct of Urban and failed to take remedial steps.

In this connection, plaintiff contends that Columbia knew of the sexual harassment in September 1988, at the time of her consultations with the Sexual Harassment Panel

and with the EOAA. Plaintiff contends that, despite this knowledge, Columbia did nothing about the problem. Plaintiff further contends that Columbia knew about the difficulty in April 1989 when she described it to Spivack of PMI. Plaintiff contends that again Columbia failed to perform its duty to take remedial action.

The information which certain Columbia employees learned in September 1988 was obtained in the course of consultations which were intended to be completely confidential. It cannot be said that this was "knowledge" on the part of Columbia of the kind that gave Columbia the duty to inquire and take remedial action. Plaintiff chose these confidential procedures instead of availing herself of the right, offered by the University, to file a grievance and initiate an investigation leading to a possible remedy against Urban. Columbia could hardly be expected to act against Urban as a result of the confidential consultations of September 1988.

■ In connection with plaintiff's claim that Columbia should have taken action in April 1989, the essential fact is that plaintiff spoke to an employee of a separate company, PMI, and did not speak to anyone at Columbia. Despite an extensive deposition record, there is absolutely no evidence that any PMI employee notified Borden or anyone else at Columbia of what plaintiff said.

Plaintiff contends that notice to PMI was the equivalent of notice to Columbia, and that PMI's knowledge should be taken to be the knowledge of Columbia. The court rejects this theory. PMI was a small company performing a service as an independent contractor to Columbia. It was not responsible for policing the problems arising between one Columbia University employee and another. If PMI had reported the matter, it would have involved going over Urban's head to someone such as Borden, and relaying a complaint about Urban. Perhaps this would have been a worthy thing to do, but PMI had no legal duty to do so, and indeed had economic reasons for minding its own business.

But overriding all of this is the salient fact that plaintiff had the ability in April 1989 or at any time to go directly to Columbia with her complaint. She did not have to rely on the uncertain, indirect channel of PMI. Under all the circumstances, the court rules that notice to PMI was not notice to Columbia and that PMI's knowledge was not the knowledge of Columbia. The events of April 1989 did not impose on Columbia any duty to take remedial action against Urban.

■ The first time that plaintiff made a complaint of such a nature as to require action on the part of Columbia was in late January 1990. When this occurred Columbia took prompt and effective remedial action. Within a reasonable time plaintiff was removed from Urban's supervision. Shortly thereafter Urban's employment was terminated.

The court rules that Columbia had no duty to investigate, or to take remedial action, until plaintiff made her complaint in late January 1990. Columbia's response to that complaint was prompt and effective. Columbia has demonstrated that it is not liable under Title VII and that there is no triable issue of fact on this claim.

■ Brief note must be made of a retaliation claim of plaintiff. It appears that plaintiff was terminated in August 1990 along with all other employees working on the Telefund operation. Plaintiff makes a conclusory, totally unsupported allegation that this was in retaliation for her sexual harassment complaint. Columbia has produced conclusive evidence that the Telefund program was cancelled for independent business reasons. The evaluation of the Telefund operation had been going on since the summer of 1989 and in the summer of 1990 a UDAR employee named Veronica Chappelle recommended that the Telefund operation be ended.

In late 1990 Columbia accepted the offer of a different company than PMI to make Columbia a demonstration site for computerized telephone fund raising. This project was developed at no cost to Columbia. Plaintiff admits that she reviewed certain

published public listings of job openings for this project, but did not apply.

## CONCLUSION

Columbia is entitled to summary judgment dismissing the Title VII claim.

The only basis for jurisdiction over the other claims against Columbia is the doctrine of pendent jurisdiction. All the claims against Borden and Urban are before the court solely on the basis of pendent jurisdiction.

Since the Title VII claim against Columbia is dismissed, there is no basis for asserting jurisdiction over the remaining claims.

The action is dismissed in its entirety.

SO ORDERED.