687 A.2d 725

IN THE MATTER OF TERRILL M. BRENNER, JUDGE OF THE NEW BRUNSWICK MUNICIPAL COURT.

Submitted December 10, 1996—Decided January 24, 1997.

*Patrick J. Monahan, Jr.,* Counsel, Designated Presenter, on behalf of the Advisory Committee on Judicial Conduct.

*Joseph J. Benedict* submitted a letter in lieu of brief on behalf of respondent (*Benedict and Altman,* attorneys).

PER CURIAM.

This matter was referred to the Advisory Committee on Judicial Conduct (ACJC or Committee) by the late Chief Justice Wilentz both as a disciplinary matter and for the adjudication of allegations of sexual harassment pursuant to paragraph C3(b) of the Supreme Court's Procedures on Handling Sexual Harassment Complaints Against Judges (Sexual Harassment Complaint Procedures). The Committee concluded that the Respondent did not commit acts of sexual harassment but that he did, on one occasion, violate the Code of Judicial Conduct. The Committee recommended a private reprimand as the appropriate discipline for that violation.

I

In late November or early December 1995, Marlena Papatto, Sandra Papatto, and Sharon Roberts, three employees of the New Brunswick Municipal Court, retained counsel in connection with their complaints of sexual harassment by Respondent, who was and is the Presiding Judge of that court. By letter of December 13, 1995, to the Assignment Judge of Middlesex County, their attorney lodged a complaint that Respondent had sexually harassed the Papattos since 1986 and had sexually harassed Roberts on November 17, 1995. The Assignment Judge forwarded the letter to the Administrative Director of the Courts, who undertook an investigation in accordance with the Sexual Harassment Complaint Procedures. After interviewing the Respondent, the three complainants, and numerous other personnel of the New Brunswick Municipal Court, as well as certain others who had knowledge of relevant facts, the assigned investigator concluded that Respondent had committed acts of sexual harassment against all three complainants. He recommended that the Administrative Director refer the matter to the Chief Justice with a recommendation for further referral to the Committee for appropriate action.

The Administrative Director referred the matter to the Chief Justice with a recommendation for further referral to the ACJC.

In accordance with paragraph 3C(1) of the Sexual Harassment Complaint Procedures, the Chief Justice referred the matter to the ACJC "for investigation, hearing, disposition and/or recommendations." The Chief Justice formally referred the matter both as a disciplinary matter, in keeping with the ACJC's traditional function pursuant to *Rule* 2:15, and as an administrative matter, to resolve the question of sexual harassment in accordance with the Procedures.

A formal complaint was served on Respondent, reciting the conclusions reached by the Administrative Director and his investigator. Respondent filed an Answer, generally denying the allegations but admitting that on November 17, 1995, he had put his arm around Roberts and had kissed her.

The Committee held a formal hearing over four days, during which it heard testimony from forty witnesses and received in evidence fourteen exhibits.

## II

The Committee's Report to this Court made the following findings:

> Respondent is a member of the Bar of the State of New Jersey and was admitted to the practice of law in 1949. In 1986, he was appointed to the position of Judge of the New Brunswick Municipal Court, and in 1993 he was named Presiding Judge of that court.
>
> Marlena Papatto and Sandra Papatto are sisters and have been employed by the New Brunswick Municipal Court since 1980. Sandra Papatto is now the Violations Clerk, and Marlena Papatto is now serving as one of two Deputy Court Administrators.
>
> Sharon Roberts was first employed by the New Brunswick Municipal Court in May 1995 in the position of clerk-cashier, a position that she continues to hold.

### Sharon Roberts

. . . .

> Roberts worked at the cashier's window and had little official contact with Respondent. She alleged that shortly after she was hired, Respondent found occasion to walk through the area where she worked to pay her compliments on her job performance, on her looks, and on her dress, and that when complimenting

her, Respondent stood very close to her. Respondent admitted having complimented Roberts but denied that he had stood very close to her, and the Committee believes him. He also admitted that he had once said to her that it looked as though she were getting taller, the reference being to the short skirt she was wearing. The Committee finds that remark to be inappropriate but relatively minor and neither a violation of the Code of Judicial Conduct nor an act of sexual harassment, especially in the absence of an objection by Roberts.

Roberts testified that on one occasion, she was leaning over the desk of another court employee and speaking to that employee when she felt someone touch her on the buttocks. She claimed that she turned around and saw Respondent, who was the only person in the area behind her, as he began to walk away. The employee on whose desk Roberts was allegedly leaning, and who would have been best situated to observe any such touching, denied at the hearing that she had seen anything of the sort described by Roberts. The Committee finds that employee to be truthful, and it concludes that Roberts' allegation in this regard has not been demonstrated by the requisite burden of proof.

On Friday, November 17, 1995, Roberts had the assignment of depositing court funds in the bank, escorted by a police officer, and then delivering municipal paychecks to Respondent and the other judge of the New Brunswick Municipal Court at their private law offices. The versions of what occurred at Respondent's law office vary sharply.

Roberts testified that when she entered Respondent's outer office, he was at the far end of the room, talking to a secretary who was operating a typewriter. According to Roberts, when she announced her presence, Respondent looked up, said she was just the person he wanted to see, and asked her to wait for a minute. He finished his business with the secretary, came over to Roberts and took his check from her, and then asked Roberts to step into his private office. Roberts did as requested, and Respondent asked her to wait for a moment while he took a telephone call. When he finished the brief call, he came out from behind his desk, approached Roberts, and told her what an excellent job she had been doing at the court.

According to Roberts, Respondent then put his arms around her waist and drew her close to him, pressing himself against her leg as he did so. She claimed that he began to kiss her passionately, asking her at one point if she used "non-smear lipstick." Eventually, Roberts informed Respondent that the patrol car was waiting for her, and that she had to leave. Roberts told him to call her at work to "talk about this." Roberts testified that she was nervous and frightened when she departed, and that no one was in the outer office when she left.

Respondent's testimony differed substantially from that of Roberts. He stated that he was sitting in his private office and

overheard Roberts ask someone in the outer office if she could see him. He testified that as Roberts entered his office, he heard the phone ring in the outer office. Respondent's wife, who worked as a secretary in the office, buzzed him on the intercom to inform him that there was a call. Respondent took the call and spoke to the caller for a minute or two. He got up from his desk and walked to the front of the desk where Roberts was standing. Respondent acknowledges that he put his arm around Roberts, and that she put both her arms around him and "snuggled up." He then asked Roberts if she was wearing smear-proof lipstick. He testified that when he kissed her on the cheek she reciprocated with encouragement of his advances. They kissed.

The Committee's findings continue:

> Mary Stoia, a paralegal and legal secretary for Respondent, testified that she was in the outer office when Roberts arrived on November 17, 1995. She corroborated Respondent's version of how Roberts came to enter his private office. Contrary to Roberts' testimony that the outer office was empty when she left, Stoia testified that she was in the outer office, along with Respondent's wife, when Roberts left. According to Stoia, the three of them said goodbye to one another and Roberts seemed cheerful.
>
> The Committee believes Stoia, finding her truthful, and it accepts Respondent's version of events in his inner office.

The Committee thus determined that Respondent's advance in his office on November 17, 1995, was not unwelcome. Because it was not unwelcome, the Committee determined that Respondent's conduct did not constitute sexual harassment. See *Meritor Savings Bank v. Vinson,* 477 *U.S.* 57, 65, 106 *S.Ct.* 2399, 2404–05, 91 *L.Ed.*2d 49, 55 (1986); *Carrero v. New York City Housing Auth.,* 668 *F.Supp.* 196, 201 (S.D.N.Y.1987). The Committee found, however, that Respondent engaged in improper conduct by a judge and that Respondent violated Canons 1 and 2 of the Code of Judicial Conduct, in that his conduct was prejudicial to the administration of justice and brought the judicial office into disrepute. *R.* 2:15–8(a)(6).

The commentary to Canon 2 states that "a judge must avoid all impropriety and appearance of impropriety and must expect to be the subject of constant public scrutiny. A judge must therefore

accept restrictions on personal conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." By hugging and kissing Roberts, a subordinate employee, even if those advances were not unwelcome, Respondent engaged in conduct that embarrassed himself and his judicial office. In addition, his conduct provided for Roberts and the Papattos a factual predicate for their complaints of sexual harassment. The Committee concluded that Respondent should be privately reprimanded.

The Committee's findings concerning Sandra and Marlena Papatto include the following:

### Sandra and Marlena Papatto

Sandra and Marlena Papatto are twin sisters who have been employed by the New Brunswick Municipal Court in various capacities since 1980. They both alleged that Respondent made improper remarks to them, touched them against their will and over their objections, and frequently attempted to [cause them to engage in unwelcome kissing]. According to them, they were afraid to enter Respondent's chambers alone and frequently asked other employees to accompany them when they had to be in chambers. They also alleged that they had made complaints over the years to a variety of officials in the court and to their coworkers.

Two witnesses, a municipal prosecutor in New Brunswick and the former presiding judge, provided meager corroboration of one aspect of the Papattos' testimony. The municipal prosecutor testified that he had not seen improper conduct by Respondent but that Marlena Papatto had told him a few years ago that she was not going to go into Respondent's chambers alone because of an incident in which Respondent tried to hug her or touch her.

The former presiding judge testified that each of the Papattos had told him several times during his tenure as presiding judge that Respondent had made unwanted sexual advances toward them. He denied that either of the Papattos had asked him to take any sort of action against Respondent.

The overwhelming evidence of all other employees, past and present, sharply contradicted that of the Papattos and sustained Respondent's position that he never made sexual advances to the Papattos. There was also evidence of hostility within this municipal court, with the Papattos being aligned with a faction hostile to

Respondent. The Committee found the long delay by the Papattos in bringing their complaint a matter of concern.

Having observed the Papattos and heard their testimony, the Committee did not find them to be credible witnesses. It rejected their allegations of sexual harassment as without merit.

## III

Based on our own comprehensive review of the record, we concur with and adopt the findings of the Committee.

As did the Committee, we find the testimony of the complainants lacking in credibility. Based on the totality of the record, we cannot conclude that the claims of sexual harassment have been established by clear and convincing evidence.

We also adopt the Committee's conclusion that Respondent's conduct with regard to Sharon Roberts on November 17, 1995, violated Canons 1 and 2 of the Code of Judicial Conduct and that such conduct warrants a private reprimand. In view of the public interest in this matter, reflected by media coverage of the allegations against Respondent, we announce this discipline publicly.

So Ordered.

*For private remandment*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.

### ORDER

The Advisory Committee on Judicial Conduct having submitted to the Court a report concluding that **JUDGE TERRILL M. BRENNER,** Presiding Judge of the New Brunswick Municipal Court, violated Canons 1 and 2 of the Code of Judicial Conduct, and that **JUDGE TERRILL M. BRENNER** should be privately

reprimanded for that conduct, and the Court having reviewed the record in the matter, and good cause appearing;

It is ORDERED that **JUDGE TERRILL M. BRENNER** be and hereby is privately reprimanded.