COLLEEN GRIFFIN *v.* YANKEE SILVERSMITH, LTD., ET AL.
(AC 28733)

DiPentima, Beach and West, Js.

you understand that?
    "[The Petitioner]: Yes. I understand that."

Argued March 27—officially released July 8, 2008

*Peter J. Bartinik, Jr.,* for the appellant (plaintiff).

*Michael A. Hardesty,* for the appellees (defendants).

*Opinion*

BEACH, J. In this workplace retaliation action, the plaintiff, Colleen Griffin, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants, Yankee Silversmith, Ltd., and Howard Trefrey, its sole owner and shareholder. On appeal, she alleges instructional error. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the plaintiff's appeal. In the spring and summer of 2004, the plaintiff worked as a sales associate and assistant manager at Yankee Silversmith, Ltd., a jewelry store in Mystic. Her supervisor, Trefrey, was the sole owner of the store. In her complaint, the plaintiff alleged that Trefrey sexually harassed her at various times between May and September, 2004, by, inter alia, repeatedly engaging her in inappropriate conversation and staring at her in a sexual manner. On September 14, 2004, the plaintiff wrote and

delivered to the defendants a letter detailing her sexual harassment allegations and demanding that "all sexual comments, or innuendo . . . stop immediately." On September 17, 2004, Trefrey responded in writing to the plaintiff's letter. In his letter, titled "corrective interview," Trefrey enumerated his complaints with the plaintiff's job performance and concluded that "[i]n order to keep your job in this store, you must do two basic things. First, retract the nasty unwarranted letter that you delivered to me the other day. Remember, I am the only one on the job that cares for your success or failure. Second, you must correct the complaints listed above immediately." The plaintiff read Trefrey's letter upon arriving at work on September 19, 2004, and when she refused to retract her complaint, her employment with Yankee Silversmith, Ltd., ended.[1]

A retaliation action against the defendants followed, at the conclusion of which the jury found in favor of the defendants. The plaintiff thereafter moved to set aside the verdict. She claimed, inter alia, that the court improperly failed to provide the jury with a charge defining sexual harassment as including quid pro quo sexual harassment. The court denied that motion and rendered judgment in accordance with the verdict of the jury. From that judgment, the plaintiff appeals.[2]

[1] Although the plaintiff alleged that Trefrey terminated her employment, it is unclear from the record whether she voluntarily quit or her employment was terminated.

[2] The defendants contend that the judgment should be affirmed under the general verdict rule, which provides that "if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party." (Internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). If a case is submitted to the jury on only one theory of recovery, the general verdict rule does not apply because under those circumstances, there can be no confusion about the actual source of the jury verdict. Id., 790. Here, as detailed in the body of this opinion, the plaintiff pleaded in her complaint only one theory of recovery for sexual harassment. Although the defendants raised special defenses in their answer, those defenses did not go to the jury. Under the circumstances, there is no confu-

The plaintiff claims on appeal that the court improperly failed to instruct the jury that, pursuant to General Statutes § 46a-60 (a) (8),[3] sexual harassment includes quid pro quo sexual harassment. We conclude that the court's instructions were proper.

"Our standard of review concerning claims of instructional error is well settled. [J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them. . . . Claims of error addressed to the [jury] charge are tested by the pleadings and by the evidence . . . . The court has a duty to submit to the jury no issue upon which the evidence would not reasonably support a finding. . . . The court should, however, submit to the jury all issues as outlined by the pleadings and as reasonably supported by the evidence." (Citation omitted; internal quotation marks omitted.) *Iazzetta* v. *Nevas*, 105 Conn. App. 591, 593–94, 939 A.2d 617 (2008).

Sexual harassment actions fall generally into one of two categories, depending on the nature of the harassment alleged. See *Burlington Industries, Inc.* v. *Ellerth*,

sion as to the basis of the verdict, and the general verdict rule does not bar review.

[3] General Statutes § 46a-60 (a) (8) provides in relevant part: " 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

524 U.S. 742, 752, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Quid pro quo sexual harassment, as its name suggests, conditions employment on the return of sexual favors; hostile environment sexual harassment is conduct that "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment." (Internal quotation marks omitted.) *Meritor Savings Bank, FSB* v. *Vinson*, 477 U.S. 57, 65, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986).

Sexual harassment is delineated similarly in the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq., which provides in relevant part that " '[s]exual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ." General Statutes § 46a-60 (a) (8). The act also proscribes retaliatory employment actions, such as employment termination, on the basis of an employee's opposition to a discriminatory employment practice, such as sexual harassment. General Statutes § 46a-60 (a) (4).[4]

---

[4] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice in violation of this section . . . (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

The plaintiff's complaint contains a single count related to Trefrey's alleged retaliation. In that count, after enumerating the incidents of alleged harassment, the plaintiff pleaded that she "was fired by [Trefey] in retaliation for the fact that the plaintiff complained about the sexual harassment in violation of General Statutes § 46a-60 (a) (4)." Her complaint does not, however, include an allegation that there was sexual harassment on a "quid pro quo" basis, either as a term or condition of her employment or as a basis for employment decisions in violation of § 46a-60 (a) (8) (A) or (B). In its charge to the jury on the law of sexual harassment, the court included instructions on the act's proscription of retaliatory employment actions on the basis of an employee's opposition to workplace sexual harassment and also defined sexual harassment pursuant to § 46a-60 (a) (8) (C), which defines hostile work environment sexual harassment.[5]

Following the jury's return of a defendants' verdict, the plaintiff filed a motion to set aside the verdict. In her motion, the plaintiff argued that the jury instructions were improper because they failed to include the quid pro quo sexual harassment definition provided in § 46a-60 (a) (8) (A) and (B).[6] At the hearing on the

[5] The court instructed the jury on the law of sexual harassment as follows: "Now, ladies and gentlemen, the plaintiff has brought a claim under a Connecticut [statute] called the Connecticut Fair Employment Practices Act, General Statutes § 46a-60. The statute provides in pertinent part: 'It shall be a discriminatory practice in violation of this section for any person, employer to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice.' Sexual harassment is a discriminatory employment practice. Sexual harassment is defined by the statute in part as: 'Any conduct creating an intimidating, hostile or offensive working environment.' Essentially, this means that it is a discriminative practice under the law if the [defendants punish the plaintiff], either or both, by retaliating against the plaintiff because the plaintiff opposed sexual harassment."

[6] The plaintiff, in her written request to charge, included § 46a-60 (a) (8) (A) and (B) in her proposed instruction on the definition of sexual harassment under the act.

plaintiff's motion, the court observed that quid pro quo sexual harassment had not been pleaded and that no evidence of such had been introduced at trial. Specifically, the court noted that it had "heard no evidence whatsoever that [Trefey] indicated to the plaintiff that if you don't respond to me, it's going to affect your work or I'm going to fire you at work or advance the work. . . . I heard absolutely nothing from [the plaintiff] that she felt it was a condition of her employment that she submit. She didn't submit anyway, but I suppose she could have thought that, well, if I don't submit to him, it'll hurt my employment. She never said that. He never indicated that." Rather, the court found that the evidence introduced by the plaintiff was consistent with a retaliation claim on the basis of a complaint of hostile work environment sexual harassment. The court subsequently denied the plaintiff's motion.

We have reviewed the court's charge and conclude that it was adapted to the evidence and correct in the law. The plaintiff's theory of quid pro quo sexual harassment was neither alleged in her complaint nor supported by the evidence. Our review of the record, including the plaintiff's testimony at trial, reveals that the plaintiff did not offer any evidence demonstrating that in order to keep her employment, she had to submit to Trefrey's sexually inappropriate conduct. There was evidence of behavior within the ambit of § 46a-60 (a) (8) (C), though perhaps not to the degree to be actionable under that statute. Accordingly, we agree with the court that there was no evidence to support a quid pro quo instruction in this case, and it properly denied the motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.