**Alexandria Sandra Ann PETROSKY, Plaintiff,**

v.

**WASHINGTON–GREENE COUNTY BRANCH PENNSYLVANIA ASSOCIATION FOR THE BLIND, Defendant.**

**Civ. A. No. 84–3037.**

United States District Court, W.D. Pennsylvania.

June 26, 1987.

M. Scott Curran, Washington, Pa., for plaintiff.

Jay M. Apfelbaum, Ceisler/Richman Law Firm, Washington, Pa., for defendant.

## FINDINGS OF FACT

GERALD J. WEBER, District Judge.

Plaintiff, Alexandria Sandra Ann Petrosky, was hired by Defendant, Washington-Greene County Branch Pennsylvania Association for the Blind, in September 1978 as Executive Director. Defendant is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. Plaintiff was responsible for overseeing the day to day operations of the Association under the direct supervision of the Defendant's Board of Directors. Plaintiff was discharged from her position on February 7, 1983. At all times relevant

to these proceedings plaintiff was an at-will employee who had no written or oral contract specifying length of employment. Plaintiff's successor was a male.

In April of 1982, plaintiff notified certain Board Members and Solicitor Larry Zewe, of a complaint that she had against Board Chairman Armand DiVincenzo, stemming from an alleged kissing incident in the fall of 1981. Board Members Thomas Wright and Carl Stark investigated the charge by discussing it with Mr. DiVincenzo in the presence of his wife. Mr. DiVincenzo denied the charge.

According to plaintiff's testimony, the incident occurred in the office parking lot after a late evening Board meeting in September of 1981. Plaintiff indicated that Mr. DiVincenzo opened her car door for her, then grabbed her shoulders and kissed her on the lips. Plaintiff rebuffed Mr. DiVincenzo verbally. He left and did not again make any sexual overtures towards her. There were no witnesses to the incident. Board Members Wright and Stark, after talking with Mr. DiVincenzo, felt that plaintiff's charge was groundless and should be dropped. This was the recommendation which they made to the Board.

Plaintiff was put on probation on May 25, 1982 by Mr. DiVincenzo. Conflicting testimony was received about the sequence of events during that meeting. Plaintiff claims that Mr. DiVincenzo said "this woman has made a sexual harassment charge against me and I am placing her on probation." Mr. DiVincenzo and various other Board members recall that Board Member Bartley Osborne moved to terminate plaintiff and in lieu of that action Mr. DiVincenzo put plaintiff on probation. The meeting of May 25th was a heated one, board minutes of it were later edited, and there appear to be as many versions of what took place as there were people present. Plaintiff's version of the events is not corroborated by any witness, but does appear to be corroborated by the unedited Board minutes. In any event, plaintiff was taken off probation by the Executive Committee at its meeting of July 12, 1982. Tony Marra was the Board member who headed the committee which looked into plaintiff's probation and recommended that it be lifted. Marra indicated that plaintiff still had problems but he hoped they could be worked out.

Credible testimony of various Board members established that plaintiff had difficulty in dealing with the Board members individually. Mr. Wright testified that he felt plaintiff did not display this difficulty during the first years of her employment. From what the court can determine, it appears that plaintiff's major conflicts with the Board arose following plaintiff's firing of Keith Dreyer early in 1982. The Board evidently met privately with Dreyer on two occasions following Dreyer's termination, and plaintiff vehemently disagreed with the manner in which the Board handled the matter and voiced this disagreement.

Mr. Wright testified that he became more aware of plaintiff's difficulties with the Board when he became Chairman of a committee and had to work more closely with plaintiff, about a year before plaintiff's discharge[1] and prior to her sexual harassment complaint. Wright felt that plaintiff tried to set up dissatisfaction between Board members, and was aware that one Board member, Ralph Stett, resigned from the Board because of continuous turmoil with the Executive Director. Wright indicated that he spoke to plaintiff about these concerns and suggested that she take a Dale Carnegie course and change her manner of dealing with the Board. Board member, Margaret Adams, also indicated that Mr. Young left the Board early in 1982 because of difficulties with plaintiff.

1. The fact of Board dissatisfaction with plaintiff's manner of dealing with people prior to her sexual harassment charge is well documented. Various Board members testified in this regard, and plaintiff's own secretary, Ronnie Holtz, indicated that she was aware that plaintiff was having difficulties with the Board prior to May of 1982. Minutes from the Board's Executive Committee meeting in March of 1982 indicate that there was some discussion of the Board's dissatisfaction with plaintiff's inability to get along with others. Plaintiff was not present at that meeting but admits she had seen the minutes. Plaintiff maintains the position that her difficulties with the Board began after her charge and as a result of it.

Adams said other Board members were aware of Young's reason for leaving the Board.

Various other Board members testified to their perception that plaintiff acted abrasively towards them or toward other individuals on the Board, and on occasion towards staff as well. Board members were upset with plaintiff's directive at one point that staff were not to talk to Board members or they would be fired. There was one complaint during a Board meeting in 1979 about plaintiff's treatment of blind persons whom the agency served. However, this appeared to be an isolated complaint. Other testimony indicated that the Board found plaintiff resistant to and uncooperative with their efforts to conduct an audit which was decided on in May 1982 and initiated thereafter. There were various other matters which concerned the Board following the May 1982 charge, such as failure to pay certain taxes, a $12,000 payment which was made incorrectly, and some problems with the quality of certain products that the Association made or shipped to customers, as well as other minor incidents. These incidents, however, plaintiff apparently tried to rectify when they were brought to her attention.

Plaintiff indicates as evidence of her competence and good performance that defendant's gross receipts grew during her employment from gross yearly receipts of approximately fourteen thousand dollars to almost one million dollars annually. This fact is not disputed by defendant, but Board members did not believe that this fact alone established plaintiff's competence. In fact, Board members felt that plaintiff's abrasiveness was of such a degree that despite her other strengths she incompetently performed her job.

Credible testimony of Board members indicated that they perceived plaintiff's sexual charge to be a smoke screen by which plaintiff attempted to divert attention from her poor performance and the Board's growing dissatisfaction with her. This perception by Board members was based on the following:

1. The delayed timing of the complaint in relation to actual occurrence of the incident and growing Board dissatisfaction with her performance;[2]

2. the Executive Committee investigation of plaintiff's sexual harassment charge and report to the Board that it was without merit;

3. plaintiff's own comments in October of 1982 to one of the female Board members, Margaret Adams, that she had gotten an N.I.B. Executive Director, Jack Jones, fired on a sexual harassment charge.[3] Miss Adams felt at the time that plaintiff was bragging about this.

Because of the perception that the charge was false, male board members became concerned about meeting with plaintiff in private in the performance of their board duties. Plaintiff, on the other hand, began to leave the loud speaker or intercom on in her office during meetings with certain board members without their knowledge so that other staff, presumably secretarial, could hear and record what was said.

The decision in this case is somewhat complicated by the fact that the Board does not appear to have been functioning very well during the relevant period. Testimony showed that attendance at meeting was sporadic and recollection of events was spotty. Board members did not appear to

2. Plaintiff explained the timing of her charge by the fact that she had learned after her incident with Mr. DiVincenzo that another employee, Betty Owens, had also had an incident (not described at length) with Mr. DiVincenzo. Plaintiff let both of these incidents go until she learned indirectly in April of 1982 (apparently from employee Pam Galeski) that Wes Miller, a Board member, had made a sexual remark to secretary, Ronnie Holtz. Ronnie Holtz testified that plaintiff did not ask her directly about the incident until the fall of 1982, and that at the time of the incident she (Holtz) had confronted Mr. Miller and he had apologized and had not repeated this conduct. Each incident appeared to be a discreet one time occurrence.

3. Plaintiff does not deny she made a comment to Miss Adams about the incident, but clarified that she had merely indicated that she had contributed to getting Mr. Jones investigated.

be very well informed overall.[4] Board members did not appear to believe it was necessary for them to follow set procedures or go through any established channels when dealing with termination of employees generally. Many of their actions appear to be based impulsively on anecdotal information. Moreover, it appears that in certain of his actions, Mr. DiVincenzo, the Board Chairman, lacked good judgment and common sense.

It appears that the final events which led to plaintiff's termination originated with an evaluation of plaintiff's performance conducted by the Board's Personnel Committee which was originally intended to be used to determine whether plaintiff should be given a salary increase and to evaluate her performance. The overall results of the evaluation showed that responses were mixed and that plaintiff got below average to satisfactory ratings. A Board meeting was scheduled during which the Personnel Committee was to give a report and there was to be a general discussion of plaintiff's raise. The Personnel Committee, chaired by Mr. Zimmer, recommended to the Board instead that plaintiff be fired. Seventeen Board members were present[5] at the meeting held on February 7, 1983, 9 voted in favor of the firing, 4 voted against the firing and 4 abstained.

The following day an informal meeting was set with plaintiff by Board Member Tony Marra who was generally sympathetic to plaintiff at that time and felt badly about the Board's decision. Marra asked plaintiff to meet with a few Board members alone, without her attorney. When plaintiff arrived late for the meeting with her attorney, Board members were upset, and at some time during the discussion, Mr. Wright ripped a feminist poster off plaintiff's wall. The poster read "A woman must work twice as hard to be thought half as good as a man. Fortunate-

ly, this is not difficult." Mr. Wright is said to have said at the time, "Sandy, it's thinking like this that got you fired." Mr. Wright testified that he said, "This has been a problem of yours from early on."

These are the main points raised in the testimony. Other evidence presented by plaintiff points to Board members addressing her as "honey" or "dearie," a comment by a Board member that the best kind of a woman is a "Honey-Do", and other remarks along these lines tending to show a less than enlightened attitude on the part of some male Board members towards women. Plaintiff also indicates that Mr. Zimmer, Chairman of the Personnel Committee which recommended her firing, was a Board member appointed by Mr. DiVincenzo.

In reviewing the conflicting testimony we must make our findings based on the credibility of the witnesses. We find that:

1. Plaintiff's difficulties with the Board predate her April, 1982 charge of sexual harassment against Mr. DiVincenzo.

2. Chairman DiVincenzo was motivated at least in part by the fact that plaintiff made a sexual harassment charge against him when he placed her on probation on May 25, 1982.

3. Board members in general did not believe that the charge was true and were dissatisfied with plaintiff's performance.

4. Plaintiff was taken off probation on July 12, 1982. Tony Marra, a Board member, who was generally sympathetic to plaintiff at the time, headed the committee which recommended that plaintiff be taken off probation. Marra indicated that plaintiff continued to have problems with the Board

---

**4.** This lack of information was something that Board members believed plaintiff was responsible for, indicating that Petrosky dominated Board meetings with discussions of a need for an increase in her salary.

**5.** There were 36 Board members many of whom appear to have been inactive. Board attendance apparently averaged somewhere between 10 and 20 members present per meeting. A special meeting of the Board was held on 4/11/83 to reconsider plaintiff's firing. At that time the Board confirmed plaintiff's dismissal by a vote of 19 to 1.

but that he hoped they could be worked out.

5. Sex was not a factor in plaintiff's termination. Plaintiff was fired due to her inability to get along with Board members in general.

## CONCLUSIONS OF LAW

 Plaintiff established a prima facie case under the guidelines set by *McDonnell Douglas v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Defendant then articulated a legitimate, nondiscriminatory reason for terminating plaintiff, i.e. her inability to get along with Board members. Therefore, plaintiff has the ultimate burden to prove to the trier of fact that the defendant intentionally discriminated against the plaintiff based on her sex. *Duffy v. Wheeling Pittsburgh Steel Corp.,* 738 F.2d 1393 (3d Cir.1984). This can be accomplished by showing that defendant's proferred justification is a pretext or sham. *Id.* We do not find that plaintiff has met her burden of proof in the case at hand. While plaintiff has provided some evidence of her claims, this evidence is insufficient to establish by a preponderance of the evidence either that defendant's proffered justification was a sham or that sex was a factor in her termination. Furthermore, we have considered plaintiff's arguments that she was forced to work in a hostile environment as a direct result of her sexual harassment charge against Mr. DiVincenzo. *See Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). We are unconvinced that the hostility between the Board in general and the plaintiff was a result of her charge. We find that defendant has established the fact that Board members felt plaintiff acted in an abrasive and disrespectful manner toward them through a litany of incidents which elicited their anger and made them distrustful of plaintiff in general and apart from her charge.

We further find that the kissing incident, assuming it occurred, along with inappropriate use of endearing terms does not automatically establish sexual harassment. In this case it does not. The kissing incident was isolated and did not reoccur and there was no evidence that plaintiff objected to the use of endearing terms or felt that she had to subject herself to them rather than suffer adverse action. We find Mr. DiVincenzo's action in placing plaintiff on probation more troublesome. Since DiVincenzo was Chairman of the Board, it is possible to draw an inference that he could and did create a hostile environment from there on. We do not draw this inference because we believe that credible testimony established that the hostile environment between plaintiff and the Board predated her charge and was a result of her general treatment of Board members. Furthermore, although the probation was troublesome, plaintiff was evaluated by a sympathetic Board committee which undeniably felt plaintiff continued to have problems, but should be given a second chance. Plaintiff did not suffer any damages as a result of being placed on probation. We do not find that plaintiff has met her burden of establishing that the Board or Mr. DiVincenzo created a hostile environment as a result of her sexual harassment charges. Board members credibly related their difficulties with plaintiff ad infinitum. For these reasons we will enter judgment in favor of defendant and against plaintiff in this action.

The foregoing opinion shall constitute the findings of fact and conclusions of law in this case which was tried non-jury before the court.