Affirmed, 5th Cir., 845 F.2d 1021, certiorari denied by 109 S.Ct. 313.

**Roger J. De WIEST**

v.

**TARLETON STATE UNIVERSITY.**

**Civ. A. No. 4-85-212-E.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Aug. 31, 1987.

Roger J. De Wiest, Tallahassee, Fla., pro se.

Esther Hajdar & Olivia B. Ruiz, Austin, Tex., and Jerry Cain, Association Gen. Counsel, College Station, Tex., for defendant.

## MEMORANDUM OPINION

MAHON, District Judge.

Plaintiff, Roger De Wiest, brought this action against Defendant, Tarleton State University, Stephenville, Texas, (T.S.U.), pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*). Plaintiff, a naturalized United States citizen born in Belgium, alleges employment discrimination on the basis of national origin. This action was tried before the Court on June 29–30, 1987.

### Plaintiff's Claims

Plaintiff claims that he was discriminated against based on the following alleged acts:

1. Plaintiff's salary was $6,000.00 less than three full professors hired at approximately the same time.

2. Plaintiff's salary was less than the salary of his successor, an associate professor.

3. Plaintiff's salary was less than other department heads who had less rank than he did as a Distinguished Professor.

4. Plaintiff's "probationary period" was two years instead of the customary one year.

5. Plaintiff was denied tenure because he recommended and hired Sashi Mathur, a non-caucasian of Indian nationality, for the position of assistant professor.

6. Plaintiff was denied tenure because of his national origin.

## JURISDICTION

The Court has jurisdiction over this cause under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Plaintiff has satisfied the procedural requirements of his Title VII claim. Tarleton State University is an employer as defined in the Civil Rights Act of 1964.

## FACTS

Plaintiff, originally of Belgian national origin, is a naturalized United States citizen. On July 11, 1983 Plaintiff was hired by T.S.U. as a Distinguished Professor and Director of the Hydrology Program at a salary of $31,500.00 for nine months during the 1983–84 academic year or a yearly salary of $42,000.00 with summer employment contingent upon the University's needs for Plaintiff's services. Plaintiff worked only 9 months in 1983–84. Plaintiff's employment contract also outlined that he was to complete a two-year probationary period. At approximately the same time T.S.U. hired three full professors as department heads at nine-month salaries approximately $6,000.00 per year above Plaintiff's salary. These department heads L. Mottola, J. Dehaye, and B. Collier, were hired in the departments of accounting and finance, general business, and computer information. Each of these departments is in the area of Business which is the largest academic concentration at T.S.U. involving approximately 25–30% of the student body. Additionally, each of these professors were hired as department heads rather than directors of a program. The title of department head out ranks that of a director of a program; for example, as the Director of the Hydrology Program, Plaintiff was immediately accountable to the Physical Sciences Department Head, T.C. Hinkson. Conversely, Plaintiff testified on cross examination that there were only a small number of students in Hydrology, and he did not supervise any professors at the time he accepted the position.[1] Furthermore, he was hired as a Director of the Hydrology Program although he was additionally given the title of "Distinguished Professor" because of his international reputation.

Plaintiff was responsible for the development of the Hydrology Program at T.S.U. The University was interested in developing its Hydrology Program into one of national prominence which included the awarding of an undergraduate degree in

---

**1.** In the Spring of 1984 Sashi Mathur was hired as Associate Director of the Hydrology Program and was under Plaintiff's supervision.

Hydrology.[2] Thus, Plaintiff was responsible for recruiting students and faculty, financial procurement activities, overseeing the development of the hydrology building, and administering the curriculum and internship program.

On November 23, 1983, only three months after Plaintiff began employment, T.C. Hinkson, Head of the Department of Physical Sciences, wrote Plaintiff a memorandum. This correspondence outlined Dr. Hinkson's concerns with Plaintiff's relative inactivity in the fledgling Hydrology Program at T.S.U. After one year, Dr. Rubin Walker, testified that Plaintiff had in fact only visited one high school for the purpose of recruiting students.

In Spring of 1984, Plaintiff sought to recruit Nazeer Ahmed from Colorado State University as Associate Director of the Hydrology Program. Ahmed was a native of Pakistan. Defendant's administrators preferred Dave Kreamer, a native-born United States citizen, for the position of associate director. He was offered this position, but he rejected it. Sashi Mathur, a citizen of Indian nationality, was hired as Associate Director of the Hydrology Program in Spring of 1984. From the testimony of Dr. Robert Fein, Director of Academic Affairs at T.S.U., there was never any discord between Plaintiff and the administration concerning the hiring of Mathur.

During the fall semester of 1984, Plaintiff lectured seven times in Wesley P. James' graduate course in Hydrology at Texas A & M University (T.A.M.U.). Also during the fall 1984 semester, Plaintiff attempted to obtain a joint appointment for himself at T.S.U. and T.A.M.U. that entailed a 50–50 distribution of time and energy at each school.

On August 7, 1984, Dr. Rueben Walter corresponded with Dr. Lamar Johnson, Dean of the School of Arts and Sciences at T.S.U. Dr. Walter was concerned with Plaintiff's forthcoming absence from T.S.U. for 7 days while he was teaching at T.A.M.U. This absence would have direct-

ly conflicted with Plaintiff's duty developing the Hydrology Program at T.S.U. Also, the August 7, 1984, memorandum addressed Dr. Walter's concerns that Sashi Mathur would not be able to competently teach Plaintiff's classes in his absence, which Plaintiff had requested. On October 23, 1984, Dr. Barry Thompson informed Robert Fain that he disagreed with Plaintiff's proposal of teaching half his classes at T.A.M.U.

On November 12, 1984, in a letter to T.S.U.'s Tenure Committee, plaintiff requested tenure even though he was no longer confident of the future success of the hydrology program he was hired to implement at T.S.U. On April 20, 1984, Mr. Rueben Walter, Head of the Department of Physical Sciences at T.S.U., recommended that Plaintiff be granted tenure. However, on November 13, 1984, Mr. Walter recommended that tenure not be granted to Plaintiff. On November 13, 1984, Plaintiff corresponded with Dr. Thompson about Dr. Walter's decision to rescind his positive tenure recommendation. On November 29, 1984, Plaintiff again wrote the Tenure Committee at T.S.U. concerning Dr. Walter's negative tenure recommendation. On December 3, 1984, the Tenure Review Committee voted 7 to 1 to not grant Plaintiff tenure. Plaintiff was informed of this on December 14, 1984. T.S.U.'s President, Barry Thompson, reviewed the recommendation of the Review Committee. He found no cause to revise their recommendation.

Plaintiff's employment at T.S.U. was terminated on May 31, 1985.

## DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT

Plaintiff asserts that he was subjected to disparate treatment because he is of Belgian national origin.

In order to prevail in an action for disparate treatment under Title VII, Plaintiff must show what he was treated different-

**2.** There are no colleges or universities in Texas which award undergraduate degrees in Hydrology. Only the Universities of Arizona and New Mexico award undergraduate degrees in Hydrology.

ly, that his employer was aware of the discrimination and failed to remedy it, and that his employer acted with discriminatory motive. *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). *McDonnell Douglas* establishes a framework for the order and burden of production of proof in an action under Title VII for disparate treatment. First, the plaintiff must establish a prima facie case of disparate treatment. Proof of a prima facie case raises an inference of discriminatory motive, which the defendant may rebut by articulating a legitimate, non-discriminatory reason for actions complained of. *Id.* If the defendant successfully meets this burden, the plaintiff must then show that the reason articulated by the defendant was pretextual, and was not the true reason for the defendant's action. *Id.*

*McDonnell Douglas,* a case involving the defendant's refusal to hire the plaintiff, set out four elements which the plaintiff must prove in order to establish the prima facie case. Although the specifications of proof differ with the circumstances of each particular case (*id.*); *see also Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)), the general framework remains the same: "Plaintiff must carry the initial burden of offering evidence *adequate to create an inference* that an employment decision was based on a discriminatory criterion illegal under the act." *Teamsters,* 431 U.S. 324, 97 S.Ct. at 1849 (emphasis added).

The *general* necessary elements to establish the *McDonnell Douglas* prima facie case in a case of discrimination with respect to national origin are: (1) the plaintiff belongs to a protected group; (2) the plaintiff was similarly situated to other employees who did not belong to a protected group; (3) certain action was taken with respect to the terms and conditions of the plaintiff's employment which was not taken against similarly situated non-protected employees under similar circumstances. Under each of Plaintiff's complaints, the Court finds that the first element of the prima facie case has been met.

■ Plaintiff first claims that he was discriminated against because of national origin with respect to compensation. The facts indicate that plaintiff was not paid less than native-born citizens.[3] Additionally, Plaintiff did not have substantially the same responsibilities as the three full professors named in his complaint. Even though Plaintiff was Director of the Hydrology Program, he supervised only one subordinate, Sashi Mathur. The other professors were directors of established programs at T.S.U. and each supervised a number of employees. Thus, the Court finds that Plaintiff failed to establish a prima facie case on his claim of discrimination in compensation based on national origin.

■ Plaintiff's next complaint was that because of his national origin he was required to complete a two year "probationary period" instead of the customary one year before being considered for tenure. Plaintiff offered no evidence that the two year "probationary period" was required because of his Belgian national origin. To the contrary, Dr. Robert Fein, Director of Academic Affairs testified that the two year "probationary period" was Plaintiff's idea. However, Dr. Tom Hinkson stated that Plaintiff welcomed the two-year tenure period in order that he have time to prove himself. Additionally, Plaintiff himself testified that he considered tenure at ab initio, that is coming to the institution with tenure, as a special favor evincing a lack of confidence in the professor and in his character. Regardless of this fact, the Court is convinced from the evidence

---

**3.** The salary paid to Plaintiff was not *significantly* less than the amount paid to other full professors at T.S.U. Plaintiff was paid $31,500 for a nine month period. The salary range for full professors was from $28,393 to $38,139 for a nine-month period. Plaintiff's salary was at most only 5% less than other department heads. Thus, the mean average of salaries for full professors for a nine-month period was $32,892.00.

presented [4] that the two year "probationary period" was not based on Plaintiff's national origin. Therefore, Plaintiff has failed to establish a prima facie case on this claim.

 Plaintiff's next complaint is that he was denied tenure because he recommended and hired Sashi Mathur, a non-caucasian of Indian nationality, for the position of assistant professor. The Court finds that in no way does the hiring of Professor Mathur have any bearing on Plaintiff's complaint of discrimination based on *his* national origin. Additionally, the Court notes that Professor Mathur was in fact hired by T.S.U. and is still employed at T.S.U. in the Hydrology Department. Again, Plaintiff has failed to establish a prima facie case on this claim.

 Plaintiff's final complaint is that he was denied tenure based on his national origin. Dr. Alice Cushman, Professor of English at T.S.U. and a member of the Promotions and Tenure Committee testified that plaintiff had not been granted tenure because of his lack of publication [5] and his lack of university service. Dr. Cushman further stated that Plaintiff was evaluated solely on the basis of the information *he* provided to the Tenure Committee as part of his candidate packet and that there was no mention of Plaintiff's nationality at the Tenure Committee meetings. Furthermore, there were no differences in the requirements for tenure based upon nationality.

From all the evidence presented, the Court finds that Plaintiff has failed to establish a prima facie case of discrimination based on national origin on any of his claims. Additionally, the Court notes that from observing the personality and demeanor of Plaintiff as a witness it was evident that Plaintiff would be a difficult person with whom to work. Throughout the trial, it was evident that Plaintiff's

personality could create a number of conflicts in the workplace.

Accordingly, the Court will enter a judgment ordering that Plaintiff take nothing by his suit and that it be dismissed.

---

**4.** Dr. Fein also testified that the customary probationary period is 7 years for a person with no experience, 4 years for a person with experience, and any amount less than 4 years is a special situation. Also, the three professors who were given tenure after one year were formerly full professors.

**5.** Plaintiff's last publication was in 1974, which is ten years from the time he applied for tenure at T.S.U. in 1983.