Bettie Jean **WHITMORE**, Plaintiff,

v.

**O'CONNOR MANAGEMENT, INC., et al., Defendants.**

No. 94–0785–CV–W–EBH.

United States District Court,
W.D. Missouri,
Western Division.

Oct. 5, 1995.

Maria North–Harris, North & Associates, Basil L. North, Jr., Kansas City, MO, for plaintiff.

Larry M. Schumaker, Shook, Hardy & Bacon, Kansas City, MO, David P. Madden, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for O'Connor Management, Inc.

John R. Phillips, Mary E. Metz, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for General Growth Management, Inc.

G. Gordon Atcheson, Blake & Uhlig, P.A., Kansas City, MO, for Local 96 Service Employees International Union.

## ORDER

ELMO B. HUNTER, Senior District Judge.

Pending before this Court is Defendant O'Connor Management, Inc.'s ("O'Connor") "MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT WITH RESPECT TO EACH OF PLAINTIFF'S CLAIMS." Plaintiff's Complaint sets forth essentially four separate causes of action against this Defendant: (1) "SEXUAL HARASSMENT UNDER TITLE VII [1] AND R.S.MO. CHAPTER 213;"

---

1. "Title VII" is codified at 42 U.S.C. § 2000e— which is Subchapter VI (Equal Employment Op- portunities) of the Civil Rights Act (which is Chapter 21 of Title 42 of the United States Code).

(2) "RETALIATION BY O'CONNOR;" (3) "EMPLOYER NEGLIGENCE—NEGLIGENT SUPERVISION/RETENTION;" and (4) "NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS." In an attempt at clarity, the Court will address each of these separate causes of action in order and individually.

### I. *Summary Judgment Standard* [2]

 Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and allows that party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

 When there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979). Summary judgment is not a "disfavored procedural shortcut," but is "an integral part of the Federal Rules." *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *City of Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). When a party fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is appropriate.

 A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d

202 (1986). The evidence favoring the non-moving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under the rule, its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Essentially, the question in ruling a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

### II. *The Relevant Facts*

On April 17, 1991, Plaintiff was employed by O'Connor to work at the Ward Parkway Shopping Center ("the mall"). (Pl.'s & Def.'s Stip. of Facts at 1.) Plaintiff worked for O'Connor from that date until January 31, 1993, when O'Connor was replaced by another management company. *Id.*; (Def.'s Mot. Summ.J. at 3–4.)

On or about January 3, 1994, Plaintiff filed a "charge of discrimination and supporting Affidavit with the EEOC and MHRC." That charge alleged that

> [b]etween about May and August 1993 [Plaintiff] was required to scrub the hallways behind the stores in the [mall]. Prior to this the work had always been done by someone in maintenance.

> No reasons were given for assigning this work to me.

> I believe that I have been discriminated against by being assigned this duty. During August 1992 I reported a sexual assault by a male co-worker and I believe that I was assigned this duty in retaliation for my having filed this complaint, in violation of Title VII of the Civil Rights Act of 1964, as amended.[3]

(Bing Aff.Ex. 1.)

On May 31, 1994, Plaintiff filed a second charge with the EEOC. That charge alleged that

---

2. Because this Court has accepted and considered matters outside the pleadings, O'Connor's motion will be treated as one for summary judgment.

3. This charge did not name O'Connor as the discriminating actor; it was not served upon O'Connor; and the acts of alleged discrimination

Since approximately August 1991 and continuing to the present, I was subjected to unwelcome sexual advances by a male co-worker. The harassment includes unwelcome verbal and physical advances, including an attempted rape.

Management is aware of the problems I experienced, yet it is my understanding that the male employee only received a two week suspension with pay.

I believe that I was subjected to unwelcome sexual harassment due to my sex (Female), in violation of Title VII of the Civil Rights Act of 1964, as amended.[4]

(Bing Aff.Ex. 3.)

O'Connor first learned of this matter by virtue of a settlement demand letter from Plaintiff's counsel dated July 31, 1994. (Def.'s Mot.Summ.J. at 17.) The present suit was filed some nineteen (19) days later on August 19, 1994.

### III. *The Relevant Law & Discussion*

#### 1. *"SEXUAL HARASSMENT UNDER TITLE VII AND R.S.MO. CHAPTER 213"*

Title 42 of the United States Code provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer—(1) to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e—2(a) (1994).[5] The Supreme Court has stated that "a plaintiff may establish a violation of [this statute] by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Although such claims may be brought against an employer, they must be timely and appropriately filed.

Section 2000e–5(e)(1) provides, in relevant part, that

[a] charge under this section shall be filed within *one hundred and eighty days*

after the alleged unlawful employment practice occurred and notice of the charge ... *shall be served upon the person against whom such charge is made within ten days* thereafter, except that in a case of unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within *three hundred days* after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier.

42 U.S.C. § 2000e–5(e)(1) (1994) (emphasis added).

■ Because most plaintiffs alleging hostile-environment sexual-harassment point to a number of different acts which comprised and created the "hostile environment", determining when the limitations period began can be difficult. The Eighth Circuit Court of Appeals has stated that when "Title VII violations are continuing in nature, the limitations period contained in § 2000e–5(e)(1) does not begin to run until the last occurrence of discrimination." *Hukkanen v. International Union of Operating Eng'rs,* 3 F.3d 281, 285 (8th Cir.1993) (citing *Gardner v. Morris,* 752 F.2d 1271, 1279 (8th Cir. 1985)). Accordingly, a plaintiff will be accorded, at most, three hundred (300) days from the date of the "last occurrence of discrimination" within which to file his/her claim under Title VII.

In the case at hand, it is uncontested that O'Connor ended its employment relationship with Plaintiff on January 31, 1993. Accordingly, and under the facts of this case, it is impossible for there to have been any acts of discrimination *by O'Connor,* even potentially violative of Title VII, following that date.

---

4. This charge also did not name O'Connor as the discriminating actor, and was not served upon O'Connor.

all took place after O'Connor had ceased being Plaintiff's employer.

5. Plaintiff initially brought this claim under both the federal "Civil Rights Act" and Missouri's "Human Rights Act." The state law portion of this claim was dismissed by this Court in a previous Order.

Therefore, even assuming O'Connor was discriminating against this Plaintiff in violation of Title VII up to and including the last day it managed the mall, the limitations period began, at the latest, on January 31, 1993—and ended, at the latest, on November 27, 1993.

▪ What Plaintiff's argument fails to recognize is that her continuing violation theory is only plausible if it is possible.[6] Title VII does not expressly prohibit sexual harassment of any kind. What is does prohibit, *inter alia,* is discrimination based on sex by an *employer.* As such, it is only to the alleged acts of discrimination by *O'Connor* this Court may look to determine when the limitations period began. In other words, because only O'Connor was capable of violating Title VII, and only so long as it was Plaintiff's employer, the last date upon which an illegal discriminatory act, which could toll the limitations period against O'Connor, could have occurred, was January 31, 1993.

▪ It is uncontested that Plaintiff filed her first claim of any kind on January 3, 1994—[7]approximately 337 days after O'Connor ceased its employment relationship with Plaintiff.[8] Accordingly, and because there are no genuine issues of material fact regarding the above-mentioned dates which would require submission to a jury, this Court may and does decide that as a matter of law Plaintiff's Title VII claims are procedurally barred due to failure to timely file.

6. Plaintiff claims that she "has alleged a continuing pattern of sexual harassment discrimination ... from approximately May of 1992 until around May of 1994." The problem with Plaintiff's argument is that all of the acts of alleged discrimination to which she has pointed were actions of *Mr. Bartee not Defendant O'Connor.* Although Plaintiff is correct in her assertion that the limitations period begins to run from the date of the last act of discrimination in violation of Title VII, what she failed to realize is that Mr. Bartee is not capable of violating Title VII by his actions. Accordingly, for purposes of tolling, Mr. Bartee's actions are totally irrelevant. What is relevant are O'Connor's actions or failures to act in response to Bartee's actions (only those are potentially violative of Title VII). Furthermore, even the actions or lack thereof by O'Con-

## 2. *"RETALIATION BY O'CONNOR"*

This claim, also being based on an alleged violation of Title VII, must be dismissed for the same reasons set forth in the foregoing section of this Order.

## 3. *"EMPLOYER NEGLIGENCE—NEGLIGENT SUPERVISION/RETENTION"*

Plaintiff claims that "O'Connor knew of Bartee's propensity to commit sexual assault and battery" yet negligently retained and failed to control him despite such knowledge. Furthermore, Plaintiff claims that "[a]s a direct and proximate result of O'Connor's breach of its duty ... Mrs. Whitmore suffer[ed] ... criminal sexual assault, battery and attempted rape." O'Connor's response to this charge is that regardless of the truth or falsehood of this claim, this Court has no jurisdiction over it. Rather, such claims fall within the "exclusive primary jurisdiction of the Missouri Labor and Industrial Relations Commission." The Court agrees with Defendant O'Connor.

The Missouri Workers' Compensation Law provides, in relevant part, that

[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever.

nor are only relevant so long as it was in fact the employer of Plaintiff.

7. Because it is unnecessary to do so, this Court will make no finding as to whether the claim filed by Plaintiff on January 3, 1994, was proper to establish a claim under Title VII against this Defendant.

8. Because it is unnecessary to do so, this Court will not attempt to determine the exact date from which the limitations period began. Making such a determination would require a finding that there was in fact illegal discriminatory acts performed by *O'Connor* against this Plaintiff at some point while it was her employer. Such a finding need not, and will not, be made at this time.

MO.REV.STAT. § 287.120 1. (1993). The act goes on to say that "[t]he rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee ... at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter." *Id.* at 2.

The Missouri Court of Appeals, Eastern District, has stated that

[t]he Workers' Compensation Act is substitutional, supplanting all other **common law rights** of an employee if the Act applies.... In all cases where it applies, the Workers' Compensation Act is exclusive. Whether or not a case comes within the provisions of the Act is a question of fact.... [And that while a] circuit court may determine whether the plaintiff was an "employee" [it] may not determine whether there was an "accident arising out of and in the course of employment." ...
The Labor and Industrial Relations Commission has sole jurisdiction over that issue.

*Hill v. John Chezik Imports,* 797 S.W.2d 528, 531 (Mo.Ct.App.1990) (emphasis added) (citations omitted). *See also Yount v. Davis,* 846 S.W.2d 780 (Mo.Ct.App.1993) (upholding dismissal of plaintiff's common law tort claims

against her former employer on the basis of the Labor and Industrial Relations Commission's primary and exclusive jurisdiction to determine whether or not there had been an accident which arose out of and in the course of employment); *Lovelace v. Long John Silver's, Inc.,* 841 S.W.2d 682 (Mo.Ct.App.1992) (stating that

whether the injury to employee Lovelace was the result of accident within the meaning of the Workers' Compensation Law so as to preclude any [common law] claim against the employer LJS ... remains for the determination of the Commission. If the injury Lovelace claims is from an intentional act, then he may proceed outside the Workers' Compensation Law. But that determination remains to be originally made by a tribunal of competent jurisdiction).

▮▮ Accordingly, this Court has no jurisdiction over common law tort claims, arising out of the course of employment, brought by an employee against an employer, unless and until it is determined by the proper tribunal that such tort(s) were intentional in nature. Because such a determination has not been made in this case, this Court does not have jurisdiction and must dismiss Plaintiff's common law tort claims.[9]

---

9. In support of Plaintiff's argument that her tort claims are not barred, she has directed this Court to the case of *Kientzy v. McDonnell Douglas Corp..* Plaintiff states that the plaintiff in that case brought a Title VII claim and that she also "invoked the court's pendent jurisdiction over claims under the Missouri Human Rights Act, Chapter 213, R.S.Mo., *and related claims for emotional distress.*" (Pl.'s Sugg.Opp'n Def.'s Mot.Summ.J. at 13.) (emphasis added). Furthermore, Plaintiff contends that the holding in *Kientzy*

clearly communicates, where the injury-causing incident does not occur while the employee is at work, or performing any work-related tasks for the employer, or during any period when the employee is expected to be or is normally at work, and during a period when the employee is totally engaged in personal pursuits, the "primary jurisdiction" doctrine is not invoked.
*Id.* at 15.
First, despite Plaintiff's claim, the plaintiff in the *Kientzy* case *did not* set forth any "related claims for emotional distress." To the contrary, her only pendent claim was for a violation of the Missouri Human Rights Act—not a common law

tort claim. Secondly, Plaintiff has misconstrued the "holding" of the *Kientzy* case. In a nutshell, the "holding" to which Plaintiff refers states no more than the obvious—that being if the damages of which a plaintiff complains are caused by something that took place after the employment relationship was terminated the injury cannot have arisen in the course of employment.

Plaintiff in this case was not terminated by O'Connor nor is she complaining about injuries which took place or arose after the termination of the employment relationship. To the contrary, although Plaintiff may not have been officially "on the clock" when she was attacked by Bartee, she is complaining of the actions of a co-employee who knew her only in that context; she was attacked on the employer's premises before her shift began; and the attack took place while she was employed by Defendant—not after.

Plaintiff's argument basically asks this Court to find that this claim is not covered by the Missouri Workers' Compensation Law simply because she had not yet "clocked in" on the day in question. That is far from enough to establish that the act complained of did not arise out of the course of employment. In fact, the flaw in

### 4. "NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS"

This claim, also being based on a common law tort theory, must be dismissed for the same reasons set forth in the foregoing section of this Order.

### IV. Conclusion

Based upon the foregoing reasoning, it is hereby

**ORDERED** that Defendant O'Connor's Motion to Dismiss, or in the Alternative, for Summary Judgment is **GRANTED.**[10]

**IT IS SO ORDERED.**

Plaintiff's argument can be readily exposed by simply assuming a situation in which Plaintiff was a salaried employee. This change in the facts is obviously insignificant for purposes of anything relevant to this lawsuit, however, because in that situation she would never be "on the clock" Plaintiff's argument would suggest that the Workers' Compensation Law could never be applicable to her. That, clearly, cannot be the case.

10. The Court finds it unnecessary to address, at this time, O'Connor's remaining defenses to Plaintiff's Complaint.