**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LEONARD L. ROSENBAUM,
Plaintiff-Appellant,

v.

THE BOARD OF TRUSTEES OF
MONTGOMERY COMMUNITY COLLEGE;
THOMAS M. LOGAN, JR., personally;

ROBERT E. PARILLA, Dr., personally;
ANTOINETTE P. HASTINGS, Dr.,
personally; FLOYD F. CUMBERBATCH,
Dr., personally; FRANK J. TUSA, Dr.,
personally; ROBERT G. KELLER, JR.,
personally,
Defendants-Appellees.

No. 98-1773

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Chief District Judge.
(CA-97-3540-JFM, CA-95-1959-JFM)

Submitted: February 24, 1999

Decided: March 19, 1999

Before HAMILTON and LUTTIG, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Craig L. Parshall, LAW OFFICE OF CRAIG L. PARSHALL, Freder-
icksburg, Virginia, for Appellant. Charles W. Thompson, Jr., County

Attorney, Karen L. Federman Henry, Principal Counsel for Appeals, Rockville, Maryland; Darrell R. VanDeusen, Clifford B. Geiger, KOLLMAN & SHEEHAN, P.A., Baltimore, Maryland; Joan I. Gordon, Office of the General Counsel, MONTGOMERY COMMUNITY COLLEGE, Rockville, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM

Leonard L. Rosenbaum appeals from the district court's order granting summary judgment in favor of Defendants in Rosenbaum's employment discrimination action filed under 42 U.S.C.A. §§ 1981, 1983 (West 1994 & Supp. 1998); Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e - 2000e-17 (West 1994 & Supp. 1998); and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12111 - 12117 (1994). Finding no error, we affirm.

Rosenbaum is a tenured member of the faculty at Montgomery College in Rockville, Maryland, where he has been employed since 1967. He is a professor of psychology and served as chair of the psychology department from 1969 until 1980. Thereafter, he was removed from the chairmanship because of the dissatisfaction of those within his department. Since that time, Rosenbaum's relationship with the College and a number of its administrators has been marked by a series of conflicts. Rosenbaum traces the genesis of these difficulties to 1978, when he alleges that he was instructed to stop hiring Jewish and African-American faculty members. In 1982, Rosenbaum filed a complaint against Montgomery College with the Equal Employment Opportunity Commission (EEOC) alleging religious and sex discrimination (Rosenbaum is a member of the Jewish faith). The EEOC determined that the allegations lacked credibility and issued Rosenbaum a right-to-sue letter.

2

Beginning in the Fall of 1990 and continuing through the Summer of 1993, Rosenbaum was unable to perform his duties as a professor during a series of lengthy absences resulting from a respiratory illness.[1] In 1993, Rosenbaum filed a second complaint with the EEOC alleging retaliation by the College for his 1982 complaint because of administrative decisions the College had made regarding Rosenbaum's leave status. This complaint was dismissed by the EEOC in March 1995 with another right-to-sue letter, and Rosenbaum filed the instant action.[2] Since that time, Rosenbaum has filed a third EEOC complaint which was dismissed because of the pending litigation. Rosenbaum filed an identical suit in the Maryland state court; that action has been removed to federal court and consolidated with this matter.

The district court dismissed some of Rosenbaum's claims and granted him leave to amend his complaint.[3] Rosenbaum filed an amended complaint and Defendants moved for summary judgment on the remaining claims. The court construed Rosenbaum's remaining claims as: (1) a Title VII claim against the College for religious discrimination, unlawful discrimination based on Rosenbaum's opposition to the College's allegedly discriminatory practices, and

_____

[1] Rosenbaum took sixteen days of paid sick leave from 11/08/90-12/04/90. He was granted eighty hours of advance sick leave on 03/28/91. He took sabbatical leave for the entire Spring 1991 semester. Rosenbaum was assigned to teach two Summer 1991 courses but indicated that he was unable to do so. He was granted twenty-four hours of advance sick leave for the Fall 1991 semester, and forty-eight hours of advance sick leave for the Spring 1992 semester. He was granted short term disability leave on 03/16/92, and he was absent from the College until 05/14/92. Rosenbaum was granted ten days of advance sick leave on 11/18/92. Rosenbaum was granted short term disability for the period 10/28/92 through 12/18/92. He was granted disability from 01/22/93 through 03/26/93.

[2] Rosenbaum filed his complaint pro se. However, he is represented by counsel in this court.

[3] The dismissed claims included: (1) claims filed against the College under 42 U.S. §§ 1981, 1983 for money damages; (2) claims against the individual defendants in their official capacity under § 1983; and (3) claims against the individual defendants under the ADA. Rosenbaum does not challenge this dismissal on appeal.

3

retaliation for Rosenbaum's EEOC filings; (2) a claim of racial discrimination against all Defendants under 42 U.S.C.A.§§ 1981, 1983; and (3) a claim against the College for discrimination in violation of the ADA. The court granted summary judgment on all claims for the Defendants, and Rosenbaum timely appealed.

We review a grant of summary judgment de novo and affirm only if the record reveals no genuine issue of material fact. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Religious discrimination claims fall into two general categories: disparate treatment based on religion and failure to accommodate religious needs. See Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996), cert. denied, ___ U.S. ___, 118 S.Ct. 58 (1997). Disparate treatment claims are analyzed under the burden shifting framework of McDonnell Douglass Corp. v. Green, 411 U.S. 792 (1973), while accommodation claims are reviewed to determine, among other things, whether the employer can accommodate the employee's needs without undue hardship. See 42 U.S.C. § 2000(j); Chalmers, 101 F.3d at 1019.

As an initial matter, we have noted that not all employment decisions having an effect on the employer/employee relationship are meant to fall within the proscriptions of Title VII. See Reinhold v. Virginia, 151 F.3d 172, 174-75 (4th Cir. 1998); Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981). Rather, a court's focus should be limited to those "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." Id. In accordance with this policy, the district court properly reduced Rosenbaum's Title VII claims to: (1) the College's handling of Rosenbaum's sick leave request and his return to work; (2) the College's denial of pay for three days in December 1993; (3) the College's refusal to accommodate his religious schedule; and (4) the College's deduction of pay for his absences during Professional Week in 1994.**4** Nevertheless,

_____

**4** Rosenbaum's remaining claims included: the College's refusal to allow Rosenbaum to tape notices to his office door, the College's alleged practice of assigning "non-Caucasian" students to Rosenbaum's classes, and the College's assignment of Rosenbaum to classrooms he deemed inferior. As the district court correctly concluded, these claims were not adverse employment decisions for purposes of Title VII. See Page, 645 F.2d at 233. Cf. Burlington Indus., Inc. v. Ellerth, ___ U.S. ___, 66

4

Rosenbaum fails to establish a prima facie case for any of his four claims under Title VII.

Turning then to the McDonnell Douglas analysis, in order to establish a prima facie case of discrimination, Rosenbaum must prove "a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." See Ennis v. National Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) (stating the standard adopted in Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). In the religious discrimination context, the employee's prima facie case may consist of a showing that "the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct." Chalmers , 101 F.3d at 1017. If Rosenbaum establishes his prima facie case, the burden then shifts to the College to articulate some legitimate, nondiscriminatory reason for the employee's complained of action. If the defendant discharges its burden of production, the plaintiff must be afforded a fair opportunity to show that the reason articulated by the defendant is pretextual. See, e.g., Ennis, 53 F.3d at 58. The burden of persuasion remains with the plaintiff at all times. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Applying this framework to Rosenbaum's disparate treatment claims, he simply did not produce any evidence that the College treated him differently than other similarly situated employees in

_____

U.S.L.W. 4634, 4639 (U.S. June 26, 1998) (No. 97-569) (holding, in the sexual harassment context, that employee must show a"tangible employment action . . . such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" to state a claim). The court further held that, taken in the aggregate, the claims did not amount to a hostile work environment. Because this conduct was not "sufficiently severe or pervasive to alter the conditions of [Rosenbaum's] employment," we agree that they did not, either singly or in combination, create a hostile work environment. See Meritor Savings Bank, FSB v. Vinson , 477 U.S. 57, 67 (1986) (internal quotation omitted).

5

regard to the contested decisions. See Chalmers , 101 F.3d at 1017. In fact, the evidence before the court indicated that the College had followed its procedures scrupulously, only deviating from them as a favorable accommodation to Rosenbaum. Specifically, Rosenbaum claimed that the College improperly denied him pay for three days of work in December 1992. A review of the facts reveals that the decision was based on a well founded belief that Rosenbaum was attempting to manipulate the College's leave system. Rosenbaum had returned to his position after an extended absence only after the conclusion of classes and after any useful work could be assigned to him. Furthermore, he failed to report to any superior regarding his return to work until the final day of the working semester (several days after he says he returned). It cannot be said that the Defendants' action in refusing to grant a paid status for the upcoming holiday recess was the product of discrimination. Because Rosenbaum did not establish a prima facie case on this claim, the district court properly denied relief.

Similarly, in regard to Rosenbaum's claim that the sick leave policy was not administered fairly in his case, the evidence shows otherwise. Despite the unusually high number of requests for leave and disability, the requests were recommended for approval by Rosenbaum's supervising dean on all but one occasion. On the one occasion when a leave request was not recommended for approval, the College chose to grant the leave nevertheless. Again, Rosenbaum's failure to establish a prima facie case renders this claim meritless.

Rosenbaum raised two reasonable accommodation claims. First, he claimed the College discriminated against him by refusing to grant him leave status for two days he was absent in observance of Rosh Hashanah in 1994. However, Rosenbaum never requested leave status either before or after his absence. Therefore, the College's decision not to pay Rosenbaum for his two day absence was not discriminatory. See Chalmers, 101 F.3d at 1017-19 (holding that to establish a prima facie religious accommodation claim, employee must notify employer of need for accommodation).

Rosenbaum's next claim suggested that the College had failed to make reasonable accommodations in his work schedule to permit him to honor his religious holidays. However, as the district court noted,

6

even Rosenbaum's own affidavits fail to support his claims. Like all employees, Rosenbaum was granted three days of paid leave which could be used for religious observances. Further, there was no way to schedule Rosenbaum's classes consistent with the College's course requirements without occasionally conflicting with religious observances. Moreover, the record indicates that the school made efforts to accommodate Rosenbaum's religious beliefs, including scheduling him to teach four days a week instead of five. See Chalmers, 101 F.3d at 1018.

Rosenbaum's final claim under Title VII alleged retaliation for his 1982 EEOC complaint. However, to prevail on a retaliatory discrimination claim, the plaintiff must show a causal nexus between the original complaint and the actions of the defendant. See Carter v. Ball, 33 F.3d 450, 460 (4th Cir. 1994). Rosenbaum completely fails to show this nexus because, as noted above, he can not show that he has been treated differently from other employees.

Rosenbaum raises the same allegations under 42 U.S.C. §§ 1981 and 1983 that he raised under Title VII. Our analysis with respect to Title VII governs these claims as well. We have held that Title VII is not an exclusive remedy for employment discrimination by a public entity. See Keller v. Prince George's County, 827 F.2d 952, 954 (4th Cir. 1987). A state employee may still bring a Fourteenth Amendment claim under 42 U.S.C. § 1983 to challenge discriminatory employment decisions. See Holder v. City of Raleigh , 867 F.2d 823, 828 (4th Cir. 1989). To prevail on these claims, Rosenbaum must show that the Defendants discriminated against him because of his Jewish ethnicity. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987). We find no evidence to support Rosenbaum's claim. Rosenbaum provided only conclusory, generalized statements to support his section 1981 and 1983 claims. Defendants provided evidence that the current chair of Rosenbaum's department is an Orthodox Jewish Rabbi who believes there is no basis for Rosenbaum's claims. Furthermore, affidavits of other Jewish professors at the College reinforced the notion that the Defendants have not engaged in discriminatory practices against those of the Jewish faith. Absent evidence establishing intentional discrimination, the district court properly granted summary judgment for the Defendants. See General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 391 (1982).

7

Finally, we note that Rosenbaum abandons his claims under the ADA on appeal. Therefore, we affirm the decision of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8