HOOPER, Chief Justice
(dissenting).
There are certain things for which an employer can expect to be sued, and, if the employer loses, he can expect to pay royally. Racial discrimination is one of those things. Sexual harassment is another. Wal-Mart Stores, Inc., terminated Clint Usrey because of allegations by a female coworker and a witness regarding what can at best be described as “shabby” treatment of that coworker while she was on the job. Because Wal-Mart took swift and effective action to prevent such behavior by an employee, this Court places Wal-Mart in a “catch-22” — retain an employee who harasses women on the job and face a possible sexual-harassment lawsuit, or terminate that employee and face a retaliatory-discharge lawsuit. The main opinion is wrong on the law and the facts.
Here is the problem with the opinion with respect to the law. Ala.Code 1975, § 25-5-11.1, states:
“No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11.”
(Emphasis added.) The word “solely” means just what it says. If an employer terminates an employee for one reason and one reason only, i.e., that the employee filed a workers’ compensation action, then that employer has violated the statute. In this case, the question is whether Wal-Mart terminated Usrey for one particular reason — because he had hired an attorney to handle his workers’ compensation case. The trial court correctly determined that, aside from Usrey’s making a workers’ compensation claim or filing an action, Wal-Mart had sufficient reason to terminate Usrey’s employment.
Even when construed in a light most favorable to Usrey, the facts in this case cannot support allowing this case to go before a jury. Construing the evidence in a light most favorable to Usrey, as the nonmovant, does not mean that the movant and this Court must believe without question everything that comes out of his mouth. At best, that would be a naive view for a court or an employer to take.
■While Usrey was being treated for the back injury he suffered in February 1994, Wal-Mart required him to take a drug test. He tested positive for marijuana use and was suspended for 30 days. However, he claimed not to have used marijuana since 1992. When he returned to work in November 1994, and in compliance with instructions of Usrey’s doctor, Wal-Mart assigned Usrey to the light-duty position of “door greeter” instead of his old job of *75 cashier. He began the door greeter’s job on November 10, 1994.
During the first week of December 1994, a female coworker complained to her supervisor that Usrey had improperly touched her and made lewd comments to her. Debra Frey, the support manager of the Anniston Wal-Mart store, where Us-rey was employed, met with both the complaining employee and a witness to the incident, to discuss the matter. Frey reported the complaint to Larry Kilgore, the store manager. The main opinion states that “[ajfter Usrey returned to work, he told his supervisor that he had hired an attorney” to handle his workers’ compensation claim and that “[sjhortly after this conversation, the store manager fired Us-rey.” 777 So.2d at 68. But it could also be said that Usrey was fired shortly after his supervisor was informed that Usrey had improperly touched another employee and made lewd comments to her.
Those joining the main opinion, expressing their own judgment, suggest that termination was too severe a discipline to impose on Usrey, considering the acts complained of. The complaining employee claimed in an affidavit that on November 29, 1994, Usrey had rubbed her back and made a “comment to the effect that he knew I was wearing a bra but he could tell I was not wearing bloomers because my butt was jiggling when I walked.” A second Wal-Mart worker, who says she was present during that incident, confirmed the complaining employee’s statements about Usrey’s statements and actions. The complaining employee and the second worker said that Usrey’s comments made them feel uncomfortable. Usrey denied making the comments, but the statements of the two witnesses directly contradicted his denial. The main opinion implies that Wal-Mart’s investigation was inadequate. What more could Wal-Mart have done?
On December 14, 1994, Kilgore and the assistant store manager, Dot Miller, met •with Usrey to discuss the incident. Usrey initially denied that the incident took place at all. Later, he admitted that the incident occurred but said that he “was only joking around.” During the meeting, Us-rey wrote the following description of the incident:
“[The two female employees] was out by the time clock. I compliment [the first employee] on her outfit, it was jumper outfit. [The two female employees] and I was both laughing of this. Nothing was never said out of the way about sexes thing or anything like that. Perhaps she or they just took it the wrong way. This is a statement from Clint C. Usrey freely on my own in front of Dot Miller and Larry Kilgore.”
On that same day, Wal-Mart terminated Usrey’s employment.
Wal-Mart’s decision to terminate Us-rey’s employment may appear severe to those joining the main opinion. Why should Wal-Mart have given Usrey the benefit of the doubt over the statements of two other employees? Usrey had demon-” strated a pattern for at least shading the truth — as demonstrated by his statement that he had not used marijuana since 1992, his initial denial of the incident with the two female employees, and his written description of the incident. Adding to that the sexual-harassment complaint, I conclude that Wal-Mart presented sufficient evidence that it did not terminate Usrey solely for the reason that he had filed a claim for workers’ compensation. At that point, Wal-Mart would have been entitled to a summary judgment on the retaliatory-discharge claim if Usrey did not rebut Wal-Mart’s showing.
It was then Usrey’s duty to present sufficient evidence that Wal-Mart’s stated reason was not the true reason but was merely a pretext. “The plaintiff does not have to ‘prove’ that the employer’s stated reason is not [the true reason] unless the defendant’s evidence is sufficiently certain, without more evidence from the plaintiff, to support a [judgment as a matter of law].” Culbreth v. Woodham Plumbing *76 Co., 599 So.2d 1120, 1122 (Ala.1992); see Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996) (quoting Culbreth). Because Wal-Mart’s evidence would be sufficient to require a judgment as a matter of law, Usrey should be required to “prove” that the stated reason was not the true reason. The main opinion does not even mention this evidentiary requirement that Usrey must meet.
What evidence did Usrey offer to rebut Wal-Mart’s evidence indicating that it had terminated Usrey for a legitimate reason? He filed two affidavits. One was his own, and the other was that of another former employee named Teresa Lumpkin. Usrey testified that Kilgore told him that he would be fired “on the spot” if he hired an attorney in connection with his on-the-job injury. Kilgore denied making the statement. Usrey said that Kilgore made that statement on February 24, 1994. (Usrey Deposition, p. 122.) Yet, Usrey was not at that time fired for hiring -an attorney. He was not fired for another 10 months. In Usrey’s deposition and in his affidavit, he denied the allegations made by the complaining female employee and contradicted the affidavit given by the second employee. He gave a totally different rendition of the facts regarding the allegation of sexual harassment. Considering Usrey’s difficulties in dealing with the truth, and considering that there were two witnesses to the sexual-harassment incident, Usrey’s self-serving affidavit is less than convincing. Was Wal-Mart wrong to believe two of its other employees and not Usrey? I think not. Surely, liability for wrongful termination should not be based on such a decision by an employer.
Wal-Mart has a very clear and well-published policy on sexual harassment. That policy includes the following statements:
“Any associate who harasses another associate or an applicant for employment for any reason, including but not limited to race, religion, color, national origin or ancestry, physical handicap, sex, age, medical condition or marital status will be subject to disciplinary action, including termination.
“Sexual harassment is a form of sexual discrimination. It is the express policy of the Company that sexual harassment of associates or applicants, by any associate or agent of the Company is unacceptable and will not be tolerated.
[[Image here]]
“Any member of management who receives a report of sexual harassment must thoroughly investigate the complaint with maximum effort to maintain confidentiality and individual privacy. No retaliation will be administered against any associate who reports a claim of sexual harassment. Following the investigation of the complaint, if the complaint is determined to be valid, the offender will face immediate and appropriate disciplinary action based upon the severity of the harassment and other relevant factors. Disciplinary action may include termination.”
(Emphasis added.) Usrey should have been well aware of the consequences of his actions and comments. But perhaps that awareness of the seriousness of the allegation is why he originally denied that the incident ever took place.
Wal-Mart had to act swiftly and effectively to avoid liability for sexual harassment.
“Sexual harassment which creates a hostile or offensive environment for members of one sex is every bit the arbitrary barrier to sexual equality at the workplace that racial harassment is to racial equality. Surely, a requirement that a man or woman run a gauntlet of sexual abuse in return for the privilege of being' allowed to work and make a living can be as demeaning and disconcerting as the harshest of racial epithets.”
Henson v. City of Dundee, 682 F.2d 897, 902 (11th Cir.1982), (quoted in Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, at 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 *77 (1986)). Meritor accepted the argument that to some extent an employer’s liability should be based upon principles of agency. In that case, the EEOC had argued for “a rule that asks whether a victim of sexual harassment had reasonably available an avenue of complaint regarding such harassment, and, if available and utilized, whether that procedure was reasonably responsive to the employee’s complaint.” It argued, “If the employer has an expressed policy against sexual harassment and has implemented a procedure specifically designed to resolve sexual harassment claims, and if the victim does not take advantage of that procedure, the employer should be shielded from liability absent actual knowledge of the sexually hostile environment_” Meritor, supra, 477 U.S. at 71, 106 S.Ct. 2399. The United States Supreme Court accepted some of the EEOC’s argument as to an employer’s liability, but not all of it. Nevertheless, appropriate corrective action is critical to an employer’s avoiding liability. See Fleming v. Boeing Co., 120 F.3d 242 (11th Cir.1997) (employer took swift and appropriate corrective action against employee who was sexually harassing coworker, and therefore employer was not directly liable for harassment).
The main opinion also says that Usrey believes Wal-Mart had made the decision to terminate him, “before questioning him” about the complaint. 777 So.2d at 70. Even if that allegation is true, and whether it is true is questionable, it would prove nothing. Wal-Mart had sufficient cause to terminate Usrey after hearing from two witnesses about his sexually inappropriate conduct. The main opinion also states: “Even though he denied making the sexually harassing comment, Usrey was fired that same day [i.e., the same day he was questioned about the alleged harassment]_” 777 So.2d at 71. Somehow, those joining the main opinion think this statement is in Usrey’s favor. However, Usrey denied making the comment, in the face of statements by two other employees indicating he had made the comment. He later changed his story and gave a very vague statement about what had happened, a statement that Wal-Mart could reasonably have construed to indicate that Usrey had made the comments complained of but thought they were innocent joking. His denial does not work in his favor. Even construed in the light most favorable to Usrey, the nonmoving party, the statements still do not help him, because they are speculative and conclusory. Perry v. Mobile County, 533 So.2d 602 (Ala.1988). They prove nothing.
According to the main opinion, Usrey’s other rebuttal evidence, the Lumpkin affidavit, stated that “[Lumpkin found] any allegations of sexual harassment against Usrey to be totally inconsistent with any behavior of Usrey that she had personally observed in the numerous times she had been around him at work.” 777 So.2d at 71. Usrey and Lumpkin both claimed that Wal-Mart had a pattern and practice of terminating employees who filed claims for workers’ compensation. Usrey testified that every person he knows who has been injured at Wal-Mart has been terminated or has been forced to quit. He could name three — Lumpkin, James Brasher, and Pay-lor Parrish. Of these three, only Lumpkin provided an affidavit.
The main opinion points out that Lump-kin testified “that Wal-Mart had falsified its records pertaining to workers’ compensation injuries, which it presented in support of its motion for summary judgment, in regard to the reason for her termination.” 777 So.2d at 71-72. Lumpkin overstated the case, however. The records Wal-Mart provided showed that Lumpkin had voluntarily terminated her employment with Wal-Mart because of family sickness. Lumpkin admitted in her affidavit that she quit voluntarily. She disagreed with the reason stated in Wal-Mart’s records. She said she quit because she was mistreated after returning to work following her injury. In her affidavit, she never said that she told Wal-mart that mistreatment was the reason she was quit *78 ting. In fact, she admits that she quit work voluntarily. Lumpkin gave her opinion as to why she quit work with Wal-Mart. Her testimony is irrelevant for determining whether Wal-Mart’s termination of Usrey was improper. These statements by Usrey and Lumpkin are little more than unsupported allegations; they are not sufficient evidence to “prove” that Wal-Mart’s stated reason was not the true reason, the requirement in such a case as this. See Culbreth, supra, at 1122.
Because of decisions such as this one issued today, employers in the situation Wal-Mart was in face a catch-22 when dealing with an employee who files a workers’ compensation claim — to terminate and face the costs of defending a retaliatory-discharge claim under § 25-5-11.1, Ala. Code 1975, or not to terminate, and face a possible sexual-harassment action by the complaining employee for millions of dollars. Those joining the main opinion, in a haste to ensure that this case goes before a jury, ignore certain facts presented to the trial court and mischaraeterize the burden of proof applicable in retaliatory-discharge actions like this one. Therefore, I respectfully dissent.